FILED ___ LODGED
___ RECEIVED ___ COPY

FEB - 3 2005

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| PAUL KAY CORONEL,            )<br>            )<br>    Plaintiff,            )<br>            )<br>    v.            )<br>            )<br>RICHARD PAUL, FRANK LUNA,            )<br>CORRECTIONS CORPORATION OF            )<br>AMERICA,            )<br>            )<br>    Defendants.            )<br>_____) | CIV 01-2222 PHX ROS (VAM)<br><br>MEMORANDUM AND ORDER |

Pending before the Court are Defendants' motion for summary judgment [Doc. #88] and Plaintiff's motions for sanctions [Docs. ##93, 95, 122].

**BACKGROUND**

Plaintiff, a Hawaii state prisoner who was then confined at the Florence Correctional Center in Florence, Arizona, a private prison operated by Defendant Correctional Corporation of America, filed a *pro se* civil rights complaint [Doc. #1] pursuant to 42 U.S.C. § 1983 on November 14, 2001. The complaint was dismissed with leave to amend on January 23, 2002. [Doc. #9]. Plaintiff filed an amended complaint on January 31, 2002. [Doc. #10]. On September 13, 2002, the Court ordered Defendants to respond to Plaintiff's allegation that Defendants violated Plaintiff's First Amendment right to the

free exercise of his religion and that Defendants violated Plaintiff's rights pursuant to the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), codified at 42 U.S.C. §§ 2000cc to 2000cc-5. [Doc. #33].

On December 19, 2002, Plaintiff filed a motion for summary judgment, which was stricken from the record on January 14, 2003. [Doc. #44 & Doc. #54]. Plaintiff filed another motion for summary judgment on March 27, 2003. [Doc. #61]. Defendants filed a response to Plaintiff's motion for summary judgment and a cross-motion for summary judgment on April 24, 2003. [Doc. #65]. Plaintiff filed a response to Defendants' cross-motion for summary judgment on May 6, 2003, and a reply regarding his motion for summary judgment on May 7, 2003. [Doc. #69 & Doc. #70]. On May 19, 2003, Defendants filed a reply in support of their motion for summary judgment. [Doc. #74].

The Court issued a memorandum and order on April 20, 2004, denying both Plaintiff's and Defendants' motions for summary judgment. [Doc. #84]. The Court determined that there was a triable issue regarding whether Defendants had violated Plaintiff's rights pursuant to RLUIPA by placing a substantial burden on the free exercise of his religion. The Court allowed Defendants thirty days to move for summary judgment in their favor, i.e., to present evidence that Defendants had a compelling state interest for burdening Plaintiff's exercise of his religion and that Defendants employed the least restrictive means of achieving that interest. [Doc. #84].

Defendants filed a second motion for summary judgment and a statement of facts in support of their motion for summary

judgment on May 20, 2004. [Doc. #88 & Doc. #89]. On June 4, 2004, Plaintiff filed a response to the motion for summary judgment and a statement of facts in opposition to Defendants' motion for summary judgment. [Doc. #94 & Doc. #96]. Defendants filed a reply regarding their motion for summary judgment on June 21, 2004. [Doc. #104].

Plaintiff, whose chosen religious affiliation is Dianic pagan, alleges that Defendants violated Plaintiff's rights pursuant to the First Amendment to the United States Constitution and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"). Plaintiff asserts that Defendant Paul violated his rights by refusing to allow Plaintiff to worship with the Pascua Yaquis or native Hawaiians incarcerated at FCC. [Doc. #10]. Plaintiff also alleges that Defendant Paul improperly ordered the "termination" of the native Hawaiian pagan religious services conducted at FCC. Id. Plaintiff asserts that Defendant Luna violated his rights by failing to establish a WICCA (pagan sect) worship program at FCC and by failing to "halt" Defendant Paul's acts. Id.

For the reasons that follow, Defendants' motion for summary judgment is granted.

## DISCUSSION

### I.     The Motions for Sanctions

Plaintiff has moved for sanctions under Fed. R. Civ. P. 56(g), alleging that Defendants filed their summary judgment affidavits in bad faith. The bad faith standard for Rule 56(g) is regarded as subjective, requiring that the offending party know that its affidavit was false, used solely as a delaying

tactic, or recklessly thrown together. 11 Moore's Federal Practice § 56.33 (Matthew Bender 3d ed. 2004). While Plaintiff disagrees with some of the factual recitations in Defendants' affidavits, he has not shown that he affidavits were filed in bad faith. The motions for sanctions are denied.

**II.     The Summary Judgment Motion**

**A.      Standard for Granting Summary Judgment**

The standard for granting summary judgment is set forth in Rule 56(c), Federal Rules of Civil Procedure. Under this rule, summary judgment is properly granted when: (1) no genuine issues of material fact remain; and (2) after viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56 (2004); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552-53 (1986); Eisenberg v. Insurance Co., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

In considering a motion for summary judgment, the Court must regard as true the non-moving party's evidence if it is supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324, 106 S. Ct. at 2548; Eisenberg, 815 F.2d at 1289. The non-moving party may not merely rest on its pleadings, he must produce some significant probative evidence tending to contradict the moving party's allegations, thereby creating a material question of fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57, 106 S. Ct. 2505, 2513-14 (1986) (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment).

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." <u>Celotex</u>, 477 U.S. at 323-24, 106 S. Ct. at 2553. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Id.</u>, 477 U.S. at 322, 106 S. Ct. at 2552; <u>see also Citadel Holding Corp. v. Roven</u>, 26 F.3d 960, 964 (9th Cir. 1994).

**B. Plaintiff's RLUIPA claim**

The RLUIPA provides:

> Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b).
> (b) Exception. Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person--
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc (2003 & Supp. 2004).

In the order issued April 20, 2004, the Court concluded that there was a triable issue of fact regarding whether Defendants placed a substantial burden on Plaintiff's free exercise of his religion. [Doc. #84]. Therefore, to succeed on a motion for judgment as a matter of law in their favor on Plaintiff's RLUIPA claim, Defendants must establish that the regulations which prohibit Plaintiff from worshiping with native Hawaiian pagans or Pascua Yaqui pagans was the least restrictive

means of fulfilling a compelling government interest.

Defendants assert that the prison regulations limiting the group worship practices of native Hawaiians and Pascau Yaquis are based on a need for institutional security, i.e., to suppress unrest by inmate ethnic groups. [Doc. #89]. The federal courts have acknowledged that state prisons have a compelling interest in establishing and maintaining institutional security by limiting inmate interactions. See Bell v. Wolfish, 441 U.S. 520, 546, 99 S. Ct. 1861, 1878 (1979); Ochs v. Thalacker, 90 F.3d 293, 296 (8th Cir. 1996); Rios v. Lane, 812 F.2d 1032, 1037 (7th Cir. 1987).

Additionally, Defendants have presented evidence that the native Hawaiian and Pascua Yaqui inmate groups have used religious worship opportunities to foment prison unrest. [Doc. #89].[1] Therefore, Defendants have offered more than conclusory

---

[1] On April 11, 2001, prior to Defendants Luna and Paul's [arrival] at FCC, a group of Hawaiian inmates rioted, resulting in injury to several correctional officers. This was not the first or last instance of Hawaiian inmates plotting and carrying out drug activity, assaults upon staff and/or inmates or other facility disturbances which created a serious threat to the safety and security of FCC....Subsequent to the riot...the Hawaii Department of Corrections ordered that all Hawaiian inmates must be prohibited from participating in the Pascau (sic) Yaqui Native American sweat lodge ceremonies as investigation had revealed that Hawaiian inmates, and particularly the [United Samoan Organization] were using such religious services as a forum in which to organize, plan and execute drug deals, assaults, riots and instances of violence and disruption at FCC....Specifically, the USOs were using the sweat lodge ceremonies to conduct undetected gang meetings and plan crimes, prison disturbances,. prison assaults and riots. ...Because the Hawaii Department of Corrections verified that the Hawaiian inmates had

statements and post hoc rationalizations for the challenged regulations, thereby satisfying the compelling interest portion of the test for determining if Defendants violated Plaintiff's RLUIPA rights. See, e.g., Hamilton, 74 F.3d at 1554; Ochs, 90 F.3d at 296-97 (concluding that prior racial violence is relevant to a court's decision to defer to prison authorities' security concerns).

Defendants have presented evidence that limiting inmate contact during religious services limits the number of potential participants in prisoner-planned disturbances. Plaintiff does not produce evidence regarding a practical, less-restrictive means of achieving the compelling goal of limiting inmate contact to prevent the planning of prison disturbances. Therefore, Defendants have established that limiting the ability of association among the native Hawaiians and the Pascua Yaquis is the least restrictive means of achieving the prison's goal of inmate security. Cf. Harris v. Chapman, 97 F.3d 499, 503 (11th Cir. 1996) (concluding, in the context of a Religious Freedom Restoration Act ("RFRA") case, that hair "length regulations were the least restrictive means of advancing substantial governmental interests in maintaining prison security and in identifying escapees"); Hamilton, 74 F.3d at 1556 (concluding

> never been permitted to sweat with Native Americans while in the custody of Hawaii Department of Corrections and because the Hawaiian inmates at FCC had proven that their participation in such religious ceremonies was not based upon sincere religious belief but instead upon criminal motivations, such practices were ceased in order to restore and preserve safety, security and discipline at FCC.

Doc. # 89 at 4-5.

that the "government has satisfied the least restrictive means prong [of the RFRA] by demonstrating that other less restrictive alternatives are not acceptable to the plaintiff"); Blanken v. Ohio Dept. of Rehabilitation & Corr., 944 F. Supp. 1359, 1370 (S.D. Oh. 1996); Muhammad v. City of New York Dept. of Corr., 904 F. Supp. 161, 194 (S.D.N.Y. 1995); Best v. Kelly, 879 F. Supp. 305, 309 (W.D.N.Y. 1995). Compare Luckette v. Lewis, 883 F. Supp. 471, 482 (D. Ariz. 1995).

Plaintiff also alleges that Defendant Paul improperly ordered the "termination" of the native Hawaiian pagan religious services conducted at FCC. [Doc. #10]. Plaintiff, a Dianic pagan, does not have standing to allege that the constitutional rights of the native Hawaiians have been or are being violated. See Massey v. Wheeler, 221 F.3d 1030, 1035 (7th Cir. 2000); Weaver v. Wilcox, 650 F.2d 22, 27 (3d Cir. 1981) ("Accordingly, the courts have held that a prisoner lacks standing to seek injunctive relief if he is no longer subject to the alleged conditions he attempts to challenge.").

Plaintiff further asserts that Defendant Luna violated his rights by failing to establish a WICCA (pagan) worship program at FCC. Defendants present evidence that Plaintiff's ability to practice his faith was not compromised and that a WICCA worship program was established when three other inmates declared this religious affiliation and, therefore, Defendants are entitled to judgment as a matter of law on this claim. See Doc. #87 at 8-9; Spies v. Voinovich, 173 F.3d 398, 404-05 (6th Cir. 1999) (concluding that the prison's "regulation requiring five documented members of a faith to be interested in forming

a faith group is reasonably related to legitimate penological interests and, thus, constitutionally valid.").

### C. Plaintiff's First Amendment claim

Prison inmates "retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348, 107 S. Ct. 2400, 2404 (1987) (citation omitted). However, regulations that impinge on an inmate's constitutional rights will be upheld if they are reasonably related to legitimate penological interests. Turner v. Safley, 482 U.S. 78, 89, 107 S. Ct. 2254, 2261 (1987); Henderson v. Terhune, 379 F.3d 709, 712 (9th Cir. 2004). Because the Court has determined that the challenged actions were the least restrictive means of achieving a compelling interest, the Court also concludes that Defendants are entitled to judgment as a matter of law on Plaintiff's First Amendment claim because the challenged actions were necessarily reasonably related to legitimate penological interests if they were the least restrictive means of achieving a compelling interest. Cf. Marria v. Broaddus, 200 F. Supp. 2d 280, 298 (S.D.N.Y. 2002) (distinguishing the "less demanding First Amendment analysis" from that required by the RLUIPA).[2]

---

[2] Two United States Circuit Courts of Appeal have held there is a different standard of review for government regulation in a First Amendment free exercise case than for reviewing a government regulation which allegedly violates the Religious Land Use and Institutionalized Persons Act of 2000. See Murphy v. Missouri Dep't of Corr., 372 F.3d 979, 988-89 (8th Cir.), cert. denied, 125 S. Ct. 501 (2004); Freeman v. Texas Dep't of Criminal Justice, 369 F.3d 854, 858 (5th Cir. 2004).

## CONCLUSION

Defendants have presented evidence that the restrictions challenged by Plaintiff were the least restrictive means of achieving a compelling purpose and, therefore, Defendants are entitled to judgment as a matter of law in their favor regarding Plaintiff's claims that Defendants violated his rights pursuant to the Religious Land Use and Institutionalized Persons Act. Because the Court has concluded that Defendants utilized the least restrictive means to achieve a compelling government purpose, Defendants are entitled to judgment as a matter of law because, having satisfied the more restrictive RLUIPA test, Defendants have necessarily satisfied the standard for prevailing on Plaintiff's First Amendment claim.

**IT IS THEREFORE ORDERED THAT** Defendants' motion for summary judgment [Doc. #88-1] is **granted**. **Judgment** as a matter of law with prejudice is hereby entered in favor of Defendants and against Plaintiff with regard to all of the allegations stated in the amended complaint, and Plaintiff is to take nothing thereby.

**IT IS FURTHER ORDERED THAT** Plaintiffs' motions for sanctions [Docs. ## 93-1, 95-1, 122-1] are **DENIED**.

DATED this 31 day of January, 2005.

Roslyn O. Silver
United States District Judge